MELLOTT *v.* LOVE, SUPERINTENDENT OF BANKS.*

(Division B.   Jan. 21, 1929.)

[119 So. 913.   No. 27075.]

---

*Corpus Juris-Cyc References: Banks and Banking, 7CJ, section 67, p. 502, n. 76; p. 503, n. 77; Infants, 31CJ, section 148, p. 1058, n. 57; section 167, p. 1072, n. 76; On right of infant to rescind purchase of corporate stock, see annotation in 28 L. R. A. (N. S.) 128; 14 R. C. L. 240.

*W. B. Alexander, Jr.,* for appellant.

*F. W. Bradshaw* and *Flowers, Brown & Hester*, for appellee.

864

GRIFFITH, J.  Some time during the year 1918 the appellant, a minor, being then about 7 years of age, purchased a share of stock of the par value of one hundred dollars in the Farmers' Bank of Boyle.  In 1921 the bank became insolvent, and the appellee took charge of it for the purpose of its liquidation, as required by the banking laws.  At the time the bank was closed the appellant had on deposit in said bank the sum of six hundred forty-nine dollars and fifty-one cents, and when the appellee in due course issued the state depositor's guaranty certificate there was deducted the sum of one hundred dollars, the amount of the stockholder's statutory liability which the appellee claimed should be debited, under section 3619, Hemingway's 1917 Code, by reason of the ostensible stock ownership of the appellant at the time in that amount, so that the certificate issued to appellant was for five hundred forty-nine dollars and fifty-one cents instead of six hundred forty-nine dollars and fifty-one cents.  The appellant, disaffirming his purchase of said stock, petitioned the chancery court to require the appellee to issue to him an additional certificate for the one hundred dollars withheld.  Answer was made to the petition admitting all the material facts, and upon hearing the chancellor denied the petition and dismissed it.

Except for necessaries and in some special cases of actual and active fraud, it has long been settled (1) that the contracts of infants impose no liability upon them which is not voidable at their election, *Ferguson* v. *Bobo*, 54 Miss. 121; *Edmunds* v. *Mister*, 58 Miss. 765; (2) that the right to avoid a contract by the infant, because of his infancy, is not affected by the fact that the rights of third parties have supervened, *Upshaw* v. *Gibson*, 53 Miss. 341: and (3) that the disaffirmance of a contract made by an infant nullifies it and renders it void *ab initio*, and all parties are thereby restored to the status in which they would have been if the contract had never been

made, 31 C. J., p. 1072; 14 R. C. L., p. 242; *French* v. *McAndrew*, 61 Miss. at page 192. Giving full operation to the principles stated, it becomes at once an obvious conclusion that there can be no stockholder's liability against the infant here if the situation involves anything whatever of contract, because, upon the disaffirmance, the whole transaction became void *ab initio*, and as empty of effect as if it had never taken place.

This conclusion seems to be recognized by appellee, and he accordingly takes the position that the liability imposed is a wholly independent, naked, statutory liability requiring for its effect not a single element of contract, either express or implied—that it is a liability created solely by the force of the statute, enacted to promote the interest of a sound public policy in the establishment and maintenance of a dependable banking system for the general welfare. And in this connection it may be noted that appellee insists that a liberal and inclusive interpretation should be given the statute in order to subserve the evident public policy mentioned. But the authorities do not warrant that insistence:

"Inasmuch as all statutes creating an additional liability on the part of stockholders are in derogation of the common law, they are to be strictly construed. They are a wide departure from established rules, and, though supposed to be founded on considerations of public policy and general convenience, are not to be extended beyond the plain intent of the words of the statute." 1 Cook on Corporations (8 Ed.), section 214.

The liability pronounced by the statute is upon stockholders; and in the plain, ordinary, and commonly accepted sense of that term, we understand it to mean those who own stock. But what kind of ownership was meant? Does it include not only real owners, but also ostensible owners; and does it include equitable owners, conditional owners, and every variety of ownership,

qualified as well as absolute? And can it be made to mean that an inflexible, naked, statutory liability is imposed upon those in whose names the stock certificates have been last issued and who stand on the books as owners, without more? Let us look at a practical, or certainly not impossible, illustration:

Suppose John Doe is absent in a far distant country, months removed from any ready means of communication, and in his absence, without any previous intimation or present knowledge or means of knowledge on his part, Richard Roe transfers to him, say, one thousand shares of stock in a bank with which the absentee has no connection and of which he has never heard, and the transferor has the new stock certificates mailed to the usual domicile or post office address of the ostensible transferee, and suppose the bank should fail before the return of John Doe and before he has had any knowledge of, or had the slightest reason to suspect, the transfer to him, would it be contended that he has become a stockholder within the meaning of this statute? And what difference, in contemplation of law, is there between an adult, wholly without knowledge or suspicion ten thousand miles away, as compared with an infant who, although present, is utterly without capacity to assume a legal position to his disadvantage, and which he may not later utterly disaffirm? Possible instances may be multiplied in illustration of the anomalies that could result from applying the statutory liability to stockholders without distinction as to, whether actual, ostensible, tentative, equitable, legal, or what not, only so long as the apparent ownership is attached to a person named. To hold that the liability is purely statutory without any foundation whatever in contract, express or implied, would be to abandon the safe and conservative course, and would lead, by a radical departure from ancient principles, into paths of danger, seen and unforeseen.

But going no further than the case now before us, we think the lability cannot be imposed on a minor who has disaffirmed, there being no fraud or conduct equivalent thereto charged against the minor, after he has arrived at a sufficient age to be subject to such charges. We are strengthened in our conclusion by the fact that, although the briefs by both sides show accuracy of conception as to the applicable principles and exceptionable industry in presenting to the court the whole field of decided cases, there has been found no case wherein it has been directly held that a minor is amenable to the statutory liability here sought to be imposed. In addition to the wealth of authorities cited in the briefs of counsel, we make reference to the latest and most comprehensive treatise on this and related subjects, Thompson on Corporations (3 Ed.), vol. 6, wherein on this identical question, at section 4895, the black letter line states the general proposition that "Infants are not subject to statutory liabilities," and thereupon the text proceeds to show how and under what circumstances the liability will attach; namely, upon, and not before, competent ratification of the contract by the infant. The case K*ent* v. *Love,* 141 Miss. 523, 106 So. 772, so strongly relied on by appellee, is readily distinguishable, for in that case the conduct of Kent was equivalent to assent.

Reversed, and decree here for appellant.

*Reversed.*