# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2021-IA-01151-SCT

*WATERCOLOR SALON LLC*

*v.*

*NEALIE HIXON*

| | |
|---|---|
| DATE OF JUDGMENT: | 09/29/2021 |
| TRIAL JUDGE: | HON. DEWEY KEY ARTHUR |
| TRIAL COURT ATTORNEYS: | ROY H. LIDDELL |
| | MICHAEL A. HEILMAN |
| | EDWARD TAYLOR POLK |
| | DANIEL JAMES HAMMETT |
| COURT FROM WHICH APPEALED: | MADISON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | ROY H. LIDDELL |
| | MICHAEL DAVID ANDERSON |
| ATTORNEYS FOR APPELLEE: | MICHAEL A. HEILMAN |
| | DANIEL JAMES HAMMETT |
| NATURE OF THE CASE: | CIVIL - CONTRACT |
| DISPOSITION: | AFFIRMED AND REMANDED - 12/01/2022 |
| MOTION FOR REHEARING FILED: | |

**EN BANC.**

**MAXWELL, JUSTICE, FOR THE COURT:**

¶1.	The trial court denied Watercolor Salon LLC's motion for a temporary restraining order and preliminary injunction filed against Watercolor's former employee Nealie Hixon. The motion was based on an employment, confidentiality, and noncompetition agreement. Because Nealie was twenty years old and thus legally a minor when she entered the agreement, the trial court held the agreement was unenforceable.

¶2.	We granted Watercolor's petition for interlocutory appeal.

¶3. On appeal, Watercolor argues its employment agreement meets the statutory exception that permits minors eighteen years or older to enter into enforceable contracts "affecting personal property."[1] Watercolor insists that, because the employment agreement protects Watercolor's intellectual property and includes liquidated damages upon breach, it necessarily is a contract affecting personal property. In other words, as Watercolor sees it, a minor who is eighteen can enter any type of contract if any type of personal property is affected in any way.

¶4. We find this logic is flawed and stretches the statutory minor disability exception too far. Just because an employment contract restricts an employee from taking intellectual property or covers what happens upon breach or termination does not completely change the *fundamental nature* of the contract. And here the fundamental nature of the contract was a noncompetition agreement that Nealie would give up her ability to work in a certain geographical area for a fixed time in exchange for continued employment at a higher hourly wage. So this employment contract was simply a contract affecting Nealie's right to work, not her personal property. Thus, the statutory exception does not apply. And because Nealie disaffirmed the contract, it is unenforceable against her.

¶5. We therefore affirm the denial of Watercolor's motion for injunctive relief, which was based solely on the unenforceable agreement. Whether Watercolor has any remaining claims against Nealie that are not based on the contract, such as the taking of trade secrets, remains to be determined on remand.

---

[1] Miss. Code Ann. § 93-19-13 (Rev. 2021).

2

## Background Facts & Procedural History

¶6. Watercolor is a hair salon with two locations, one in Jackson and one in Ridgeland, Mississippi. Nealie started working for Watercolor in September 2020. Six months later, at Watercolor's request, she signed the employment, confidentiality, and noncompetition agreement. She was twenty years old when she signed it.

¶7. Under the contract's noncompetition provision, Nealie agreed that for three years following termination of her employment by Watercolor she would not work for another salon located within a fifteen-mile radius of Watercolor's locations. The agreement also prohibited Nealie from disseminating Watercolor's proprietary information or using its trade secrets. In the event of a breach, the contract provided for liquidated damages.

¶8. Nealie resigned by text message in July 2021. Her message to Watercolor stated she was going to dental hygienist school. But Watercolor soon learned Nealie had begun working at another salon in Brandon, Mississippi. Because this salon was within the fifteen-mile prohibited radius, Watercolor texted Nealie back that, per their agreement, she must immediately stop working there. Nealie refused, asserting that her new employer—while perhaps within fifteen miles of a Watercolor location "as the crow flies"—was in reality located eighteen miles away by car.

¶9. Watercolor did not stand down. Instead, it filed a complaint for temporary, preliminary, and permanent injunctive relief and for other claims and damages against Nealie. After a hearing, the trial court[2] denied Watercolor's request for temporary and

---

[2] Watercolor initially filed its complaint in the Madison County Chancery Court, which transferred the case to the Madison County Circuit Court.

preliminary injunctive relief. The trial court held that the noncompetition agreement between Watercolor and Nealie was unenforceable against Nealie because she was a minor when she entered it. Miss. Code Ann. § 1-3-27 (Rev. 2019). Further, the agreement did not fall under the statutory exception allowing minors to enter enforceable contracts affecting personal property. Miss. Code Ann. § 93-19-13.

¶10. Watercolor filed a petition for interlocutory appeal, which this Court granted.

**Discussion**

¶11. The only question on interlocutory appeal is—did the trial court err by finding the agreement unenforceable because Nealie was under twenty-one years old when she entered it? By statute, anyone under the age of twenty-one is a minor. Miss. Code Ann. § 1-3-27. And public policy gives a minor the right to disaffirm a contract "to protect the minor from his own improvidence and the overreaching of adults." ***Star Chevrolet Co. v. Green ex rel. Green***, 473 So. 2d 157, 162 (Miss. 1985) (citing ***Lake v. Perry***, 95 Miss. 550, 49 So. 569, 572 (1909)).

¶12. There is, however, a statutory exception. "All persons eighteen (18) years of age or older, if not otherwise disqualified, or prohibited by law, shall have the capacity to enter into binding contractual relationships affecting personal property."[3] Miss. Code Ann. § 93-19-13. Elsewhere, the Mississippi Code defines personal property to mean "all tangible and intangible personal property[,]" including "cash, goods, deposit accounts, chattels, effects,

---

[3] "In addition, all persons eighteen (18) years of age or older shall have the capacity to enter into binding contractual relationships for the purpose of investing in mutual funds, stocks, bonds and any other publicly traded equities." Miss. Code Ann. § 93-19-13.

4

evidences of rights of action, and all written instruments, including promissory notes, by which any pecuniary obligation, or any right, title, or interest in any real or personal estate, shall be created, acknowledged, transferred, incurred, defeated, discharged, or diminished." Miss. Code Ann. § 1-3-41 (Rev. 2019). Combining this broad definition of personal property with Section 93-3-13's disability-of-minority exception, Watercolor insists that any person eighteen years and older has the capacity to enter into binding contractual agreements if the agreement affects personal property in any way whatsoever. We disagree.

¶13. We find this incredibly broad interpretation stretches Section 93-19-13's disability removal too far. Restrictions in employment contracts that address intellectual property or provide for what happens if the contract is breached or terminated do not alter the fundamental nature of the contract. The contract still remains what it is—an employment contract with a noncompetition provision.

¶14. Here, Watercolor Salon sought a temporary restraining order and preliminary injunction based on the *employment* contract. Watercolor's contract with Nealie is not a sales contract, not a banking agreement, and it is not a promissory note. Nor is it a written instrument creating a pecuniary obligation. It is clearly an employment contract in which Nealie gave up her ability to work in a certain geographical area for a certain period of time in exchange for continued employment at a higher hourly wage. Therefore, the contract affects Nealie's right to work, not her personal property.

¶15. Under the dissent's logic, a contract for the sale of real property would be binding against an eighteen-year-old because the minor put down earnest money—i.e., pledged her

personal property, which she stood to lose if she tried to back out of the contract. This is certainly not what the Legislature intended when it removed the disability of minority so persons eighteen years or older could "enter into binding contractual relationships affecting personal property." Miss. Code. Ann. § 93-19-13. Section 93-19-13 is an exception *to* the rule that persons under twenty-one years of age are minors who should be protected from entering binding contracts. It is not—as the dissent interprets it—an exception that swallows the entire rule and overrides the statute, making eighteen the new age of majority for any and all types of contracts.

¶16. The question whether eighteen-year-olds should be able to enter into binding employment contracts with noncompetition provisions is a policy decision for the Legislature. And this Court cannot judicially create an exception for such employment contracts by simply broadening Section 93-19-13's exception for contracts "affecting personal property." Again, this is a decision for the Legislature.

¶17. Simply put, Watercolor's employment agreement does not meet Section 93-19-13's personal-property contract exception. Because Nealie was a minor when she entered the employment contract, the law clearly allowed her to disaffirm and void it. *Mellott v. Love*, 152 Miss. 860, 119 So. 913, 913 (1929); *cf. PAK Foods Houston, LLC v. Garcia*, 433 S.W.3d 171, 177 (Tx. Ct. App. 2014) (affirming the denial of a motion to compel an arbitration agreement in an employment contract because the minor employee had disaffirmed the contract). Moreover, in Mississippi, "restrictive contracts [like this one] are in restraint of trade and individual freedom and are not favorites of the law." *Frierson v.*

*Sheppard Bldg. Supply Co.*, 247 Miss. 157, 154 So. 2d 151, 156 (1963). Unreasonable, overreaching noncompetition agreements will not be enforced—even against adults. *E.g.*, *Empiregas, Inc. of Kosciusko v. Bain*, 599 So. 2d 971, 975 (Miss. 1992) (refusing to enforce a noncompetition agreement that was oppressive to the terminated employee). So the fact that Nealie was a minor when asked to enter a noncompetition agreement makes it all the more obvious why she should be allowed to disaffirm the contract. *See Star Chevrolet Co.*, 473 So. 2d at 162.

¶18.  That is not to say that, on remand, Watercolor has no claims against Nealie. Nealie's minority would not shield her from liability if she took without permission Watercolor's dryers, scissors, aprons, hair dyes, and other beauty supplies from her former employer. The same would be true if she took her former employer's trade secrets. *See Rice Researchers, Inc. v. Hiter*, 512 So. 2d 1259, 1268 (Miss. 1987) (recognizing trade secrets as protected property rights), *abrogated on other grounds by Bluewater Logistics, LLC v. Williford*, 55 So. 3d 148 (Miss. 2011). But whether Watercolor has any claims against Nealie that are not based on the unenforceable employment agreement is outside the limited scope of this interlocutory appeal.

¶19.  We conclude by making clear that this appeal concerns one thing—the trial court's denial of Watercolor's request for a temporary restraining order and preliminary injunction. This request was based solely on the unenforceable noncompetition agreement. Because the trial court did not abuse its discretion when it denied Watercolor's motion, we affirm. We remand for further proceedings that recognize the agreement is unenforceable.

¶20.    **AFFIRMED AND REMANDED.**

**KITCHENS AND KING, P.JJ., COLEMAN AND BEAM, JJ., CONCUR. RANDOLPH, C.J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY CHAMBERLIN, ISHEE AND GRIFFIS, JJ.**

**RANDOLPH, CHIEF JUSTICE, CONCURRING IN PART AND DISSENTING IN PART:**

¶21.    I agree with my fellow jurists that the trial court did not abuse its discretion by denying Watercolor Salon's request for a temporary restraining order and preliminary injunction, which is the only issue presented in this appeal. I also agree with my fellow jurists that the case should be remanded to the trial court for further proceedings. There may well be a host of reasons why the contract should not be enforced against Hixon, but her age standing alone is not one of them. The trial court's decision, which the majority would affirm, that Mississippi Code Sections 93-19-13 and 1-3-41 are not applicable is not supported by a plain reading of the statutes. Because this position is contrary to the statutory language, I am constrained to dissent.

¶22.    The issue before this Court is not about "the *fundamental nature* of the contract" or whether the agreement is restrictive, unreasonable, or overreaching, as the majority writes. Maj. Op. ¶ 4, 17 (emphasis added). The issue before this Court is whether the employment, confidentiality, and noncompetition agreement between Hixon and Watercolor affects personal property.[4] It is undisputed that Hixon was twenty years old when she executed the

_____

[4] This is not to say that the agreement is enforceable. The trial court may find that it is unduly restrictive, unreasonable as to duration, unreasonable as to distance, obtained by duress, unconscionable for a myriad reasons, or that it was obtained in violation of standards and/or regulations that require cosmetologists to be licensed. This list is not meant to be

8

agreement and that in Mississippi contracts are generally not binding on those under the age of twenty-one. *See Star Chevrolet Co. v. Green ex rel. Green*, 473 So. 2d 157, 160 (Miss. 1985). But our legislature decreed in Mississippi Code Section 93-19-13 that persons eighteen years of age or older have the capacity to enter into binding contractual relationships affecting personal property. Hixon, based on age alone, had the capacity to enter into certain contracts.

¶23.    The majority delves into a discussion on the "*fundamental nature*" of the employment, confidentiality, and noncompetition agreement. Maj. Op. ¶ 4 (emphasis added). The majority writes that because the agreement is "an employment contract with a noncompetition provision[,]" it cannot satisfy the requirements of Section 93-19-13. Maj. Op. ¶ 13. "[T]he contract affects Nealie's right to work, not her personal property." Maj. Op. ¶ 14. No authority, including case law and learned treatises, supports these conclusions. Such a reading is inconsistent with the plain language of Section 93-19-13, which requires only that the contract affect personal property. No language in the text of the statute supports the notion that employment agreements do not affect personal property.

¶24.    The majority also opines about the legislature's intent in crafting Section 93-19-13. *See* Maj. Op. ¶ 15. But, "[i]f the words of a statute are clear and unambiguous," as they are in Section 93-19-13, this Court "applies the plain meaning of the statute[.]" *Lawson v. Honeywell Int'l, Inc.*, 75 So. 3d 1024, 1027 (Miss. 2011) (citing *Clark v. State ex rel. Miss. State Med. Ass'n*, 381 So. 2d 1046, 1048 (Miss. 1980)). A plain reading of the text should

exhaustive and is provided for example only.

control our decision. And, according to the plain meaning of Section 93-19-13, the contract must *affect* personal property.

¶25. Employees earn tangible assets, generally cash or checks, which can either be converted to cash or deposited in their bank account (savings or checking). When employees enter the workforce, they grant authority to their employers, typically through a W-4 form, to withhold part of their earnings and further to transfer part of their earnings to government authorities.

¶26. If an employer wrongfully refused to pay an employee wages earned by the employee, the employer would be wrongfully withholding personal property of the employee.[5] All property is either real or personal. We have expressly held that "personal property" means "everything which is the subject of ownership not coming under the denomination of real estate[.]" *Watson v. Caffrey*, 236 Miss. 223, 109 So. 2d 862, 866 (1959) (quoting 73 C.J.S. *Property* § 8).

¶27. Should any doubt remain as to what is personal property, we refer to the Mississippi Code, the language of which the trial court erred by rejecting. We read Mississippi Code Sections 93-19-13 and 1-3-41 together. Section 93-19-13 reads:

> All persons eighteen (18) years of age or older, if not otherwise disqualified, or prohibited by law, shall have the capacity to enter into binding contractual relationships *affecting personal property*. In addition, all persons eighteen (18) years of age or older shall have the capacity to enter into binding contractual relationships for the purpose of investing in mutual funds, stocks, bonds and any other publicly traded equities.

---

[5] The employment, confidentiality, and noncompetition agreement establishes that a relationship exists and that Watercolor is obligated to pay personal property, i.e., wages, to Hixon.

10

Miss. Code Ann. § 93-19-13 (Rev. 2021) (emphasis added). "Personal property" is defined in Section 1-3-41 as:

> all tangible and intangible personal property and shall include cash, goods, deposit accounts, chattels, effects, evidences of rights of action, and all written instruments, including promissory notes, by which any pecuniary obligation, or any right, title, or interest in any real or personal estate, shall be created, acknowledged, transferred, incurred, defeated, discharged, or diminished.

Miss. Code Ann. § 1-3-41 (Rev. 2019).

¶28. A plain reading of these statutes reveals that all persons eighteen and older have the capacity to enter into binding contractual agreements so long as the agreement affects personal property. An agreement "affect[s]" personal property if it produces an effect on it or influences it in some way. *Affect*, Black's Law Dictionary (11th ed. 2019); *see also Affect*, Webster's II New College Dictionary (1st ed. 1995) ("To bring about a change in"). Several examples of personal property from Section 1-3-41 are present in and affected by the agreement at issue. First, "intangible personal property" includes all personal property that lacks a physical existence. *Intangible Personal Property*, Black's Law Dictionary (11th ed. 2019); *see also Intangible*, Webster's II New College Dictionary (1st ed. 1995) ("Incapable of being apprehended by the mind or senses"). The confidentiality clause protects Watercolor's interest in preventing the dissemination of confidential information and trade secrets.[6] That clause affects the intangible personal property of Watercolor and restricts

---

[6] The clause provides that

Employee understands he/she is prohibited from disclosing Confidential information to any third-party under any circumstance. Employee further understands and agrees that all Confidential Information, including without limitation customer lists, financial records, documentation of customer

11

Hixon's ability to use that intangible property. *See* §§ 1-3-41, 93-19-13. Additionally, the agreement affects "chattels" and "effects." *Id.* "Chattels" are defined as movable or transferable property. *Chattel*, Black's Law Dictionary (11th ed. 2019); *see also Chattel*, Webster's II New College Dictionary (1st ed. 1995) ("An article of moveable, personal property"). And "effects" are defined as moveable property or goods. *Effects*, Black's Law Dictionary (11th ed. 2019); *see also Effects*, Webster's II New College Dictionary (1st ed. 1995) ("Moveable goods"). This personal property is affected by the language in the agreement requiring that "Employee shall, upon termination for any reason, deliver to Watercolor Salon all supplies, inventory, equipment, materials, and Confidential Information that is in Employee's possession or under Employee's control." *See* § 93-19-13. Moreover, the agreement includes "rights of action" for injunctive relief or liquidated damages for violations of the confidentiality and noncompetition clauses.[7] § 1-3-41. A "right of action"

preferences and hair coloring formulae, shall be kept on the premises of Watercolor Salon and shall not be transferred off-site or disseminated off-site to any third-party for any reason.

[7] The agreement reads:

Employee agrees that any dissemination by Employee of Confidential Information of Watercolor Salon to any third-party shall constitute immediate and irreparable harm to Watercolor salon and shall entitle Watercolor Salon to immediate injunctive relief . . . . Employee and Watercolor Salon agree that in the event injunctive relief is not ordered, that Watercolor Salon shall be entitled to an award of liquidated damages in the amount not less than $30,000 from Employee, plus attorney fees and expense incurred by Watercolor Salon.

Similarly, any violation of the promise not to compete for three years within a fifteen mile radius of Watercolor Salon shall constitute immediate and irreparable harm to Watercolor Salon and its members, and shall entitle

is the right to bring a specific case to court. *Right of Action*, Black's Law Dictionary (11th ed. 2019). Finally, the agreement is a "written instrument[]" creating numerous financial or pecuniary obligations. § 1-3-41. One such obligation requires "that if [Watercolor] terminates [Hixon] without cause, Watercolor Salon agrees to give [Hixon] 14 day notice of termination with pay until termination, or 14 days severance pay[.]" Any of these factors alone are enough to establish that the employment, confidentiality, and noncompetition agreement affects personal property.

¶29.     This Court has held that the term "personal property" is quite broad, especially when read in conjunction with the definition of "property" in Mississippi Code Section 1-3-45 (Rev. 2019). *Davis v. Davis (Est. of Waitzman)*, 507 So. 2d 24, 26 (Miss. 1987). We have used this broad definition of personal property in cases dealing with Section 93-19-13. For example, in *Garrett v. Gay*, 394 So. 2d 321, 323 (Miss. 1981), we held that Section 93-19-13

> effectively removes the disability of minority of all persons 18 years of age or older for the purpose of entering into contracts affecting personal property including the right to settle a claim for personal injuries, to execute a contract settling the claim, and to accept money in settlement of the claim.

¶30.     The statutory language and our decisions support a finding that the employment, confidentiality, and noncompetition agreement affects personal property. As such, Hixon's

---

Watercolor Salon and its members to immediate injunctive relief . . . , recovery of all attorneys fees incurred in securing injunctive relief and any other relief appropriate under the circumstances. Employee and Watercolor Salon agree that in the event injunctive relief is not ordered, that Watercolor Salon shall be entitled to an award of liquidated damages in the amount not less than $30,000 from Employee, plus attorney fees and expenses[.]

13

age alone does not make the agreement unenforceable. I would find that the trial court erred when it found that Hixon was not bound by the agreement with Watercolor due solely to her age.

**CHAMBERLIN, ISHEE AND GRIFFIS, JJ., JOIN THIS OPINION.**