PAYNE, J.,
for the Court:
PROCEDURAL HISTORY
¶ 1. This case concerns an automobile accident which involved Appellant Jerry Chandler’s son and Appellee Connie Coleman. Coleman and her husband filed a property damage claim in the justice court of Winston County and received a favorable verdict. Thereafter, Jerry Chandler appealed to the Winston County Circuit Court, wherein the circuit court upon trial de novo arrived at the same decision as the justice court, awarding the Colemans a judgment in the amount of $2,499 for damage to their car. Feeling aggrieved of such judgment, Chandler timely filed his notice of appeal to this Court.
FACTS
¶ 2. This ease arose from a December 3, 1995 traffic accident involving Appellee Connie Coleman and appellant Jerry Chandler’s fourteen year old son, Charles Allen Chandler. The collision occurred when the minor Chandler rear-ended Connie Coleman as she was stopped to make a left turn. With this appeal, Jerry Chandler argues for a reversal of judgment as he claims he is not responsible for his child’s actions and should not be forced to pay Coleman’s damages.
ARGUMENT AND DISCUSSION OF THE LAW
STANDARD OF REVIEW
¶ 3. In this petition, appellant Jerry Chandler argues, first, the Colemans failed to offer any theory of liability for their damages which would hold Jerry liable for his son’s actions, and second, that the Colemans submitted no evidence concerning the damages they suffered.
¶ 4. Our standard of review in examining the judgment of a trial court is well-established:
“A circuit court judge sitting without a jury is accorded the same deference with regard to his findings as a chancellor,” and his findings are safe on appeal where they are supported by substantial, credible, and reasonable evidence. Where the trial court failed to make any specific findings of fact, this Court will assume that the issue was decided consistent with the judgment and these findings will not be disturbed on appeal unless manifestly wrong or clearly erroneous ... In contrast, this Court reviews errors of law de novo.
Par Indus., Inc., v. Target Container Co., 708 So.2d 44 (¶¶ 4-5) (Miss.1998) (citations omitted).
¶ 5. We evaluate the circuit court’s findings and conclude the trial judge was errant in his application of the law. Reviewing this case de novo and applying the relevant authority, we find no authority exists whereby Appellant Jerry Chandler can be held liable for the Colemans property damages inflicted by Chandler’s son under the facts as presented to us in this case. Accordingly, we must reverse and render this case.
*461 ANALYSIS OF THE ISSUES PRESENTED
I. SINCE THE PLAINTIFFS DID NOT ADVANCE ANY THEORY OF LIABILITY AT THE TRIAL IN CIRCUIT COURT WHICH WOULD CAUSE DEFENDANT TO BE LIABLE TO PLAINTIFFS FOR THEIR ALLEGED DAMAGES IN THAT IT WAS NOT DISPUTED THAT DEFENDANT WAS NOT THE DRIVER OF VEHICLE WHICH CAUSED PLAINTIFFS’ ALLEGED DAMAGES, AND SINCE THE PLAINTIFFS DID NOT PRODUCE ANY EVIDENCE AT THE TRIAL BEFORE THE CIRCUIT COURT AND THERE WAS NO EVIDENCE ADMITTED AT THE TRIAL IN THE CIRCUIT COURT WHICH WOULD CAUSE DEFENDANT TO BE LIABLE TO PLAINTIFFS, THE JUDGMENT OF THE CIRCUIT COURT SHOULD BE REVERSED AND JUDGMENT SHOULD BE RENDERED IN FAVOR OF THE DEFENDANT.
¶ 6. With this first issue, Chandler essentially argues the Colemans presented no liability theory whereby Chandler could be held liable for his son’s acts. The information we are provided in this case is scant: neither the justice court judge nor the circuit judge attached to their judgments an opinion stating each’s reasons for his findings; Appellees Grover and Connie Coleman failed to file a brief on appeal to offer a rebuttal to Chandler’s claims; and the trial transcript only consists of excerpts from Grover and Connie Coleman’s brief question and answer session with the judge and with Chandler’s attorney. With this little information, we are left to infer that the justice court and the trial court arrived at the wrong conclusions by reason that each failed to apply proper law, as no authority exists whereby, under these facts, each could have arrived at his respective conclusions.
¶ 7. In his brief, Chandler argues no law or statute exists whereby he can be held liable for the acts of his son in this case. Specifically, Chandler argues the case of Prewitt v. Walker, 231 Miss. 860, 97 So.2d 514 (1957). In Prewitt, a minor obtained a drivers license by making fraudulent statements concerning his age on his application for a license and by failing to get his parents’s signature on the application. The minor took the car without his parents’s knowledge or permission and caused an accident while he was driving the car. The Prewitt court held the parents were not liable for their son’s actions as there was no clear proof the parents knew and authorized the unlicensed minor to drive their car, as the statute mandated must be the case for liability to attach. The court also refused to extend liability beyond the bounds established by the statute.
¶ 8. The statutory law on this issue is stated in the Mississippi Code at § 63-1-61:
No person shall cause or knowingly permit his child or ward under the age of sixteen (16) years to drive a motor vehicle upon any highway if such minor is not authorized under the provisions of this article or is in violation of any of the provisions of this article. Any penalty imposed under the provisions of this section shall be in addition to any penalty imposed against the minor for a violation of this article.
Miss.Code Ann. § 63-1-61 (Rev.1996).
¶ 9. As in Prewitt, there is no proof in the case sub judice that Jerry Chandler knew his fourteen year old son was taking the car. Strictly reading the statute on this point, we cannot find liability since the requisite element of “granting permission” does not exist.
¶ 10. The law in this state is not well-developed regarding this issue, nor does there exist ample case law on point. Therefore, we take this opportunity to analyze this issue of parent liability using the recent Mississippi Supreme Court case of Williamson v. Daniels, 748 So.2d 754 (Miss.1999).
*462 ¶ 11. In Williamson, the minor child was fifteen year old Eddie Smith, son of Daniels, the appellee. Smith was momentarily home alone; he went outside, threw a ball at Williamson’s car and set off the car alarm. Smith and Williamson then began arguing which led to Smith’s pulling a gun and shooting Williamson in the chest, leaving Williamson paralyzed from the waist down. At trial, testimony was submitted of Daniels’s violent nature, specifically with regard to several prior violent incidents to the event in question. Nonetheless, the Mississippi Supreme Court said there was insufficient evidence as to create a jury issue as to foreseeability of the shooting. The court found Daniels not liable for her son’s acts.
¶ 12. The Williamson court described the following rule regarding liability of a parent:
The Restatement (Second) of Torts § 316 has attempted to clarify the common law as it pertains to the liability of parents for the willful or malicious acts of their children by imposing upon parents a duty to exercise reasonable care so to control [one’s] minor child as to prevent it from intentionally harming others or from so conducting itself as to create an unreasonable risk of bodily harm to them, if the parent (a) knows or has reason to know that he has the ability to control his child, and (b) knows or should know of the necessity and opportunity for exercising such control. Under § 316, the duty to take reasonable measures to control the child arises when the parent knows or should know of the need to control the child and has both the ability and the opportunity. In other words, the parent must actually be capable of controlling the child as ivell as aware of a specific need to do so.
Williamson, 748 So.2d at 759 (¶ 16) (emphasis added).
¶ 13. In Williamson, Daniels, the mother, was well aware of Smith’s violent nature. Some of Smith’s prior acts evincing his violent nature include striking a boy at school, rendering the child unconscious; pulling a knife on his uncle during an argument; threatening to shoot a small girl with a pellet gun; and allegedly participating in a robbery, among other incidents. Even with all this evidence regarding Smith’s violent nature, the court still refused to find Smith’s mother liable for Smith’s actions.
We think it important to note that the mere fact that the parents failed to control the child is insufficient to prove negligence; they must have failed to act as reasonably prudent parents based on notice of the child’s propensity to do harm.
We think it unreasonable to require parents to anticipate and guard against every logically possible instance of misconduct. Extending the zone of foreseeability so far as to include Williamson’s claim would pose the risk of transforming parents from care givers and disciplinarians into the jailors and insurers of their minor children. We think this is a role most parents are ill equipped to take on.
Williamson at (¶¶ 17, 27) (emphasis added).
¶ 14. We are given no indication in the brief submitted nor in the record that Jerry Chandler’s son exhibited a propensity to do harm. Per the above-cited passages, we cannot find Chandler liable merely by virtue of his being the minor’s father, nor can we find that Chandler failed to guard against his son’s misconduct merely by our examination of the one accident the child caused, especially since there was no evidence that the parents knew he had taken the car.
¶ 15. In addition to the Williamson case, we also find persuasive a federal case that addresses this point. In Athridge v. Rivas, 141 F.3d 357 (App.D.C.1998), the facts were somewhat similar to the Chandler’s case. In Athridge, sixteen year old Jorge was at his cousins’s house to mow the lawn. His cousins being out of town, *463 Jorge entered their house through a window, took keys to their car, and went out for a ride. During this excursion, Jorge hit a person, causing severe injuries to that person. The court said Jorge’s parents were not liable since there was no way for Jorge’s parents to know he would take the car.
Here the Athridges similarly failed to demonstrate that Jorge’s parents were “aware that [Jorge was] engaging in conduct which was unlawful or which might inflict injury upon others.” They offered no evidence that Jorge’s parents knew that he had driven before the day of the accident. They offered no evidence that the Iglesiases knew that Jorge had access to the [cousins’s] house or car; rather, the evidence indicated that the [cousins] were out of town and that the house would therefore be locked. In sum, “to render a parent responsible for injuries resulting from the wrongful acts of a minor, his negligence in the exercise of parental supervision must have some specific relation to the act complained of, tvhich is lacking in the present case.”
Athridge, 141 F.3d at 363 (citations omitted) (emphasis added).
¶ 16. The Athridge court found that negligence must be shown on the parents’s part. The Williamson court also addressed negligence in parental supervision of a child:
Under common law, parents can be liable for their children’s acts “where the [parents’s own] negligence has made it possible for the child to cause the injury complained of and probable that the child would do so.” This is the cause of action known as negligent supervision, and it is based on the simple premise that parents have a societal duty to exercise reasonable care in the supervision of their minor children so as to prevent them from intentionally injuring others. An actionable claim of negligent supervision, as is the case with all negligence claims, requires that the plaintiff establish the existence of a duty of care, a breach of that duty, proximate causation, and compensable damages. Each element must be satisfied. This requires not only that the plaintiff show negligence and injury, but that the injury sustained by the plaintiff was a rea-' sonably foreseeable consequence of the defendant’s negligence.
Williamson at (¶¶ 13-14); see also 67 C.J.S. Parent and Child § 68, p. 798 and Tatum v. Lance, 238 Miss. 166, 117 So.2d 795 (1960).
¶ 17. As the Athridge court found Jorge’s parents were not negligent in supervising him, we find no specific relation showing Jerry Chandler was negligent in supervising his son. Chandler further states in his brief absolutely no evidence existed showing that he caused or knowingly permitted his child to drive on the occasion in question. Reviewing the requirements dictated above whereby negligent supervision must be proven, we find that Jerry Chandler had a duty to supervise his child, but leaving ones’s keys within reach of a fourteen-year-old can hardly be seen as a breach of that duty.
¶ 18. While case law has held that “[permitting a child, of an age forbidden by statute to drive, to operate a car has been held to constitute negligence on the part of the parent,” we find no proof, as stated above, that Jerry Chandler either permitted his son to drive or that he was negligent. United Gas Pipe Line Co. v. Jones, 236 Miss. 471, 111 So.2d 240, 252 (1959) (citations omitted). Thus, we cannot use negligence as a reason to hold Jerry hable for his son’s taking the car.
¶ 19. We take note the Colemans failed to file a brief in regard to this matter. While this does not act to necessarily reverse the trial court judgment, the Colemans must recognize we are not obligated to do their research for them.
Automatic reversal is not required where the appellee fails to file a brief. The appellant’s argument “should at *464 least create enough doubt in the judiciousness of the trial court’s judgment that this Court cannot ‘say with confidence that the case should be affirmed.’” Where the appellant’s brief makes out an apparent case of error, however, this Court is not obligated to look to the record to find a way to avoid the force of the appellant’s argument.
Selman v. Selman, 722 So.2d 547 (¶ 13) (Miss.1998) (citations omitted) (emphasis added). In the present case, the error is apparent: the trial court failed to apply relevant case law and statutory law to this matter and arrived at the wrong conclusion.
¶ 20. For the foregoing reasons and in light of the appellees’s failure to file a brief rebutting such argument, we must reverse as no law exists to support the findings of the lower courts’s decisions.
II. SINCE THERE WAS NO EVIDENCE ADMITTED IN THE TRIAL BEFORE THE CIRCUIT COURT WHICH SHOWED HOW MUCH DAMAGES THE PLAINTIFFS ALLEGEDLY SUFFERED, THE JUDGMENT OF THE CIRCUIT COURT SHOULD BE REVERSED AND JUDGMENT SHOULD BE RENDERED IN FAVOR OF THE DEFENDANT.
¶ 21. Having declared that this case warrants reversal, this second issue of damages is moot.
CONCLUSION
¶22. The trial judge erred in finding Jerry Chandler liable for damages stemming from the car accident caused by his son. As no law exists in support of such finding, we now reverse the trial court.
¶ 23. THE JUDGMENT OF THE WINSTON COUNTY CIRCUIT COURT IS REVERSED AND RENDERED. ALL COSTS OF THIS APPEAL ARE TAXED AGAINST THE APPELLEES.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, DIAZ, IRVING, LEE, MOORE, AND THOMAS, JJ., CONCUR.